IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BUFFALO WILD WINGS, INC., <br> a Minnesota corporation, | § <br> § <br> § | |
| Plaintiff, | § <br> § | CASE NO. 4:10-cv-01265 |
| v. | § <br> § | JURY TRIAL DEMANDED |
| BWR McALLEN, INC., <br> BWR McALLEN, INC. II, and <br> VELA WINGS INVESTMENT, LTD., | § <br> § <br> § <br> § | |
| Defendants. | § | |

**BUFFALO WILD WINGS' OPPOSITION TO
DEFENDANTS' MOTIONS TO STAY**

**INTRODUCTION**

This case is about the defendants' infringement of trademarks and trade dress owned by Plaintiff Buffalo Wild Wings, Inc. The defendants are three Texas restaurants that feature chicken wings in a sports-themed atmosphere like Buffalo Wild Wings. The defendants, BWR McAllen, Inc. ("McAllen"), BWR McAllen, Inc. II ("McAllen II"), and Vela Wings Investment, Ltd. ("Vela Wings"), operate under franchise agreements with Buffalo Wings & Rings, LLC ("BWR"). Buffalo Wild Wings sued BWR in a case pending in the District of Minnesota.

Two of the defendants, Vela Wings and McAllen II, have moved to stay this action under the "first-to-file" rule, arguing that the parties and claims are nearly identical to those asserted in the lawsuit against BWR in Minnesota. (Dckt Nos. 18 and 27).

Despite the colorful rhetoric in both motions, neither Vela Wings nor McAllen II provides any actual support for their claim that the first-to-file rule applies.

Rather, Vela Wings admits that it is not a party to the Minnesota Action, but claims that there is substantial overlap between the cases for two reasons: (1) both involve "buffalo wings," and (2) if Buffalo Wild Wings loses the Minnesota Action, Vela Wings can invoke collateral estoppel. Dckt. No. 18, p. 2. As set forth below, this case involves far more than "buffalo wings." Notably, Vela Wings claims it will have the ability to invoke collateral estoppel if Buffalo Wild Wings loses the Minnesota Action, but does not state that it will be bound by a decision that is in Buffalo Wild Wings' favor. McAllen II provides no independent support for its motion to stay, and instead relies solely on the two reasons provided by Vela Wings. *See* Dckt. No. 27.

The first-to-file rule does not apply for three reasons. First, the lawsuits involve different parties. Second, Defendants have committed independent acts of infringement. And finally, this is the proper District for Buffalo Wild Wings to assert its infringement claims against Defendants.

## FACTS

### A.   Buffalo Wild Wings Is A Successful Restaurant Chain.

Buffalo Wild Wings owns, operates, and/or franchises approximately 660 Buffalo Wild Wings Grill & Bar® restaurants in 40 states. Buffalo Wild Wings is a family sit-down restaurant and bar featuring chicken wings and other boldly-flavored menu items in a sports-themed atmosphere.

Buffalo Wild Wings is one of the fastest growing restaurant franchises in the United States. Buffalo Wild Wings has received numerous awards for its concept, brand, advertising, food and service.

**B.    Buffalo Wild Wings Owns Several Federal Trademarks.**

Buffalo Wild Wings has used the term "Buffalo Wild Wings" since 1982 and has incorporated that term in numerous trademarks. Buffalo Wild Wings owns the following registered trademarks, all of which are valid and subsisting:

 a. U.S. Registration No. 1,496,316 for the word mark BUFFALO WILD WINGS & WECK for use with restaurant services;

 b. U.S. Registration No. 2,239,550 for the word mark BUFFALO WILD WINGS for use with restaurant services;

 c. U.S. Registration No. 3,038,771 for the word mark BUFFALO WILD WINGS for use with sauces, namely, barbecue sauces;

 d. U.S. Registration No. 3,038,772 for the word mark BUFFALO WILD WINGS for use with seasoning, namely, an ingredient for flavoring potato chips, popcorn, pretzels and peanuts;

 e. U.S. Registration No. 3,106,653 for the word mark BUFFALO WILD WINGS GRILL & BAR for use with restaurant services;

 f. U.S. Registration No. 3,699,826 for the word mark BUFFALO WILD WINGS GRILL & BAR for use with sauces, namely barbeque sauces;

g.  U.S. Registration No. 3,319,506 for the word mark BUFFALO WILD WINGS EXPRESS for use with restaurant services;

h.  U.S. Registration No. 1,497,262 for the design mark on the right for use with restaurant services; 

i.  U.S. Registration No. 2,187,765 for the design mark on the right for use with restaurant services; and 

j.  U.S. Registration No. 3,038,770 for the design mark on the right for use with seasoning, namely, an ingredient for flavoring potato chips, popcorn, pretzels and peanuts; 

(Hereafter "BUFFALO WILD WINGS Trademarks.")

Buffalo Wild Wings has continuously and prominently used the BUFFALO WILD WINGS Trademarks in connection with its business, and has invested over 100 million dollars to develop brand equity, public recognition, and goodwill in the BUFFALO WILD WINGS Trademarks.  As a result of these efforts, consumers associate the BUFFALO WILD WINGS Trademarks with Buffalo Wild Wings, and the marks are highly valuable assets representing substantial good will.

C.     **Buffalo Wild Wings Owns A Distinctive Trade Dress.**

In addition to its trademarks, Buffalo Wild Wings is the owner of inherently distinctive trade dress consisting of a combination of features that combine to create the unique look and feel of Buffalo Wild Wings restaurants. Buffalo Wild Wings' trade dress includes, but is not limited to, the following elements (hereafter "Trade Dress"):

- Stylized buffalo images
- Prominent use of buffalo images within a concentric circle
- Prominent use of the color yellow
- Wide open interior with a spacious feel
- Heavy emphasis on sports and televisions
- Branded décor
- Branded signature promotions
- Bold, branded font
- Use of bold patterns as design elements

The photographs on the next page illustrate Buffalo Wild Wings' trade dress.








As a result of Buffalo Wild Wings' use of the Trade Dress, and through its efforts to promote its look and feel, the Trade Dress has gained widespread public recognition, and has become a highly valuable asset representing substantial good will. Buffalo Wild Wings' Trade Dress is inherently distinctive and customers rely upon it to differentiate the goods and services of Buffalo Wild Wings.

### D.   Buffalo Wild Wings Sued BWR In June 2009.

In June 2009, Buffalo Wild Wings brought a lawsuit against BWR in the District of Minnesota asserting claims for trademark infringement, trade dress infringement, false advertising, and unfair competition (hereafter "Minnesota Action"). Buffalo Wild Wings' initial complaint in the Minnesota Action named BWR and various "John Doe" defendants. Declaration of Lora M. Friedemann ("Friedemann Decl."), ¶ 2. The John Doe defendants were franchisees of BWR which were not then known to Buffalo Wild Wings. *Id*.

### E.   BWR Objected To The Inclusion Of Franchisees In The Complaint.

BWR objected to the inclusion of its franchisees in the suit for various reasons, including that the court lacked personal jurisdiction over the franchisees. *Id*., ¶ 3. After a limited opportunity for discovery, Buffalo Wild Wings agreed that personal jurisdiction was lacking and amended its complaint to drop the franchisees as defendants, making BWR the sole defendant in the Minnesota Action. *Id*. Because BWR objected to the inclusion of the franchisees in the Minnesota Action, Buffalo Wild Wings was forced to file separate lawsuits against franchisees such as Vela Wings and McAllen II. As

demonstrated below, not only were separate suits needed due to personal jurisdictional concerns, but different factual and legal issues also exist with respect to the franchisees.

### F. This Case Presents Unique Issues.

This case presents at least three issues that are distinct from those presented in the Minnesota Action.

First, one of BWR's witnesses testified that BWR's franchisees often create their own advertising and promotional materials. *Id.*, Ex. A, p. 32. During discovery, Buffalo Wild Wings will seek information regarding Defendants' individual advertising and promotional efforts, which are not at issue in the Minnesota Action and are highly relevant to Buffalo Wild Wings' claims in this case.

Second, the employees at Vela Wings' restaurant are wearing black and yellow T-shirts identical to those worn by Buffalo Wild Wings' employees. Friedemann Decl., Ex. B, pp. 35-37. Discovery in the Minnesota Action has not shown that any other Buffalo Wings & Rings' restaurant is using the exact same uniform as Buffalo Wild Wings. *Id.*, ¶ 6.

Third, there is evidence that the Buffalo Wild Wings restaurants in McAllen and Weslaco have lost profits as a result of the confusion between Buffalo Wild Wings and Defendants' restaurants. *Id.*, ¶ 7. Buffalo Wild Wings has not quantified lost profit damages in the Minnesota Action. *Id.*

### G. Actual Confusion Has Occurred.

Actual confusion has occurred between Buffalo Wild Wings and Defendants' restaurants, including the following:

- Buffalo Wild Wings restaurants in the McAllen and Weslaco area receive phone calls intended for Defendants' Buffalo Wings & Rings restaurants;

- Takeout orders are not picked up at Buffalo Wild Wings because customers go to Defendants' Buffalo Wings & Rings restaurants by mistake;

- Vendors attempt to deliver product intended for Defendants' Buffalo Wings & Rings restaurants to Buffalo Wild Wings;

- Buffalo Wild Wings receives mail intended for Defendants' Buffalo Wings & Rings restaurants;

- Applicants for jobs at one or more of Defendants' Buffalo Wings & Rings restaurants attempted to submit their employment applications to Buffalo Wild Wings;

- Confusion regarding which specials are offered at Buffalo Wild Wings and which are offered at Defendants' Buffalo Wings & Rings restaurants;

- Buffalo Wild Wings has received customer complaints intended for Defendants' Buffalo Wings & Rings restaurants; and

- An air conditioner repairman showed up at one of the Buffalo Wild Wings restaurants in McAllen to make repairs that were requested by one of Defendants' Buffalo Wings & Rings' restaurants

*Id.*, Ex. B, pp. 47-48; 122.

This confusion is causing irreparable and immediate harm to Buffalo Wild Wings.

## **ARGUMENT**

### I. THE FIRST-TO-FILE RULE DOES NOT APPLY.

#### A. Legal Standard.

The first-to-file rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment. *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (*citing Save Power Ltd. v. Syntek Fin. Corp.*, 121

F.3d 947, 950 (5th Cir. 1997)); *see also, West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985). The purpose of the first-to-file rule is to encourage comity among federal courts of equal rank. *See Cadle*, 174 F.3d at 603.

As Vela Wings points out in its motion, joined by McAllen II, a stay is only appropriate if the parties and issues are identical or nearly identical. *See* Dckt. No. 18, p. 2. As set forth below, the current litigation includes different parties and distinct legal issues. Thus, a stay is improper in this case.

**B.     The Parties In This Case Are Different Than the Minnesota Action.**

There is no overlap between the defendants in this case and the Minnesota Action. The defendant in the Minnesota Action is BWR. The defendants in this action are McAllen, McAllen II, and Vela Wings. Because the defendants are entirely different, the first-to-file rule does not apply.

There is no overlapping ownership, parent/subsidiary relationship, or even a sister relationship between BWR and Defendants. They are separate entities that have a contractual relationship with one another, and BWR specifically objected to the inclusion of franchisees such as Defendants in the Minnesota Action. Notably, Defendants cited no authority that supports the proposition that a franchisor and franchisee are considered one and the same for purposes of the first-to-file rule. To Buffalo Wild Wings' knowledge, no court has held that such a relationship renders them one and the same for purposes of the first-to-file rule.

**C.     The Legal Issues Are Distinct.**

This case involves distinct legal issues from those in the Minnesota Action.

10

First, BWR concedes that its franchisees often create their own advertisements. Buffalo Wild Wings has not had the opportunity to conduct any discovery to determine whether Defendants created advertisements that infringe on Buffalo Wild Wings' trademarks. Buffalo Wild Wings intends to explore that issue in discovery.

Second, the employees at Vela Wings' restaurant are wearing the same black and yellow T-shirts worn by Buffalo Wild Wings' employees. Because the uniforms provided by BWR authorized vendors are different, the Vela Wings' uniforms are not at issue in the Minnesota Action. More importantly, this evidence shows that further discovery is necessary to determine the extent of Defendants' independent acts of infringement. Defendants operate hundreds of miles from BWR, and it is likely that they have adopted individual practices that are distinct from those of BWR. These practices may infringe Buffalo Wild Wings' trademarks and trade dress, and are not at issue in the Minnesota Action. Without discovery, Buffalo Wild Wings has no way of knowing the extent of Defendants' infringement.

Finally, there is evidence that the Buffalo Wild Wings restaurants in McAllen and Weslaco have lost profits due to the confusion between Buffalo Wild Wings and Defendants. Thus, Buffalo Wild Wings will likely seek lost profits damages in this case. On the other hand, Buffalo Wild Wings' primary damages model in the Minnesota Action is not based on a lost profits analysis.

A stay is inappropriate because the parties and issues in this case are distinct from the Minnesota Action.

### D. The Southern District Of Texas Is The Appropriate District for Buffalo Wild Wings To Pursue Its Claims.

This case should proceed because the first-to-file rule does not apply when the court in the first-filed action lacks jurisdiction over a party in the second action. *See, e.g., See Cadle Co.*, 174 F.3d at 605 ("the likelihood of a jurisdictional dispute in the first-filed court may be a factor to consider in applying the 'first to file' rule"); *Tape & Techs., Inc. v. Davlyn Mfg. Co., Inc.*, 2005 WL 1072169 at *4 (W.D. Tex. May 6, 2005) (denying motion to dismiss second-filed suit because "[t]here remains a question of whether the [court of the first-filed action] may properly exercise personal jurisdiction")

Buffalo Wild Wings initially sought to assert its claims against Defendants in the Minnesota Action. Buffalo Wild Wings later dropped McAllen, McAllen II, and Vela Wings as defendants because they are not subject to suit in Minnesota.

Obviously, Buffalo Wild Wings is entitled to assert claims against Defendants for ongoing infringement of its trademarks and trade dress. This court is the proper forum for Buffalo Wild Wings to do so. The first-to-file rule does not apply in such circumstances because Buffalo Wild Wings' claims against Defendants could not be resolved in the Minnesota Action.

### II. DEFENDANTS ARE NOT ENTITLED TO A STAY.

The first-to-file rule does not apply for the reasons noted above. However, even if the rule did apply, this court has discretion to dispense with the rule when equity so demands. *See Multi-Shot, LLC v. B & T Rentals, Inc.*, 2010 WL 376373 at *4 (S.D. Tex.

12

Jan. 26, 2010) ("Whether to apply the first-filed rule is a decision within the discretion of the district court") (citation omitted).

Defendants are infringing trademarks and trade dress that are owned by Buffalo Wild Wings. Buffalo Wild Wings is entitled to a forum to pursue those claims. Staying this action would deprive Buffalo Wild Wings of any forum and allow Defendants to continue their infringement, causing irreparable harm to Buffalo Wild Wings and increasing the amount of damages Buffalo Wild Wings would seek against Defendants when Buffalo Wild Wings is permitted to pursue its claim.

## **CONCLUSION**

For the reasons set forth above, Buffalo Wild Wings respectfully requests the Court to deny Vela Wings and McAllen II's motions to stay in their entirety.

| | |
|---|---|
| Dated:  June 16, 2010 | _/s/ Andrew W. Zeve_<br>Andrew W. Zeve<br>Andrew.zeve@bgllp.com<br>Tex. State Bar No. 24042209<br><br>BRACEWELL & GIULIANI LLP<br>711 Louisiana Street, Suite 2300<br>Houston, Texas 77002-2770<br>Phone: (713) 221-1225<br>Fax: (713) 221-2102<br><br>**ATTORNEY-IN-CHARGE FOR PLAINTIFF BUFFALO WILD WINGS, INC.** |

Of Counsel:

Lora M. Friedemann
lfriedemann@fredlaw.com
D. Minn., Minn. State Bar No. 259615
Laura L. Myers
lmyers@fredlaw.com
D. Minn., Minn. State Bar No. 387116
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Phone: (612) 492-7000
Fax: (612) 492-7077

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record via the Court's electronic filing system pursuant to the Federal Rules of Civil Procedure on the 16th day of June, 2010.

                                                          _/s/ Andrew W. Zeve_
                                                          Andrew W. Zeve